UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NANCY DER SARKISIAN,                  )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )      CIVIL ACTION
                                      )      NO. 20-12037-DPW
AUSTIN PREPARATORY SCHOOL,            )
                                      )
          Defendant.                  )
_____)


MEMORANDUM AND ORDER
December 6, 2022

     Plaintiff, Nancy Der Sarkisian, an experienced teacher, brings this action against her former employer, Defendant Austin Preparatory School, claiming that the school (1) failed to provide her a reasonable accommodation for her disability (an extended and open-ended leave of absence from teaching she never specifically asked for before crystalizing that proposal in this litigation) and chose instead to terminate her employment, and in doing so, (2) discriminated against her due to her age.  Austin Preparatory School has moved for summary judgment on both counts, arguing that Mrs. Der Sarkisian was not a "qualified individual" with respect to disability discrimination and that she cannot establish pretext as to age discrimination.  I will grant the motion for summary judgment.

## I. BACKGROUND

### A.   *The Parties*

**Plaintiff, Nancy Der Sarkisian**, was seventy years old at the date of filing her Complaint, and had previously been employed by Austin Preparatory School for twenty-four years.  Ms. Der Sarkisian resides in Reading, Middlesex County, Massachusetts.

**Defendant, Austin Preparatory School** ("Austin Prep"), is a private co-educational institution in Reading, Middlesex County, Massachusetts.

### B.   *Travel of the Case*

The case now before me was commenced on October 2, 2020, when Ms. Der Sarkisian filed her Complaint in the Massachusetts Superior Court, Middlesex County.  Following that filing, on November 12, 2020, Austin Prep accepted service of the Summons and Complaint.  On November 13, 2020, Austin Prep filed a Notice of Removal to this Court, pursuant to 28 U.S.C. §§ 1331 and 1441(c)(1)(A).[1]

---

[1]   This court can exercise jurisdiction over Mrs. Der Sarkisian's Americans with Disabilities Act ("ADA") claim and over her state law claims.  Section 1441(c)(1)(A) of Title 28 of the United States Code permits removal of an "entire action" when it contains "a claim arising under the Constitution, laws, or treaties of the United States" (here, Mrs. Der Sarkisian's ADA claim), even including "a claim not [otherwise] within the original or supplemental jurisdiction of the district court or a claim that [separately] has been made nonremovable by statute" (here, Mrs. Der Sarkisian's claims under Massachusetts General Laws chapter 151B).  *See also Brader* v. *Biogen Inc.*, 362 F. Supp. 3d 25, 36 (D. Mass. 2019) (district court had jurisdiction over ADA and state law claims pursuant to 28 U.S.C. §§ 1331 and 144(c)(1)(A)), *aff'd*, 983 F.3d 39 (1st Cir. 2020).

*C.   Factual Background*

1.   Austin Prep and Mrs. Der Sarkisian's Tenure through 2017

Austin Prep, a private Catholic independent day school located in Reading, Massachusetts, serves 750 students from Grades 6 through 12.  Dr. James Hickey serves as the Head of School, and was forty-nine years old as of the filing of the motion for summary judgment before me.  John Weber was fifty-six years old at that point and acts as Austin Prep's Chief Financial Officer.

Throughout Mrs. Der Sarkisian's employment, Austin Prep observed an Equal Employment Opportunity policy and a Handicap or Disability Accommodation policy.  The Handicap or Disability Accommodation policy stated that individuals with disabilities "should advise his or her immediate supervisor of any disability and the nature of the accommodation necessary to enable him or her to perform one or more of the essential functions of the job." Austin Prep maintained these policies in its Employment Handbook, which Mrs. Der Sarkisian received.

---

Mrs. Der Sarkisian properly exhausted her administrative remedies by filing a complaint with the Massachusetts Commission Against Discrimination within the statutorily imposed three-hundred-day period and waited ninety days to file her Complaint in Massachusetts Superior Court.  Filing with the Massachusetts Commission Against Discrimination is sufficient under both the ADA and Chapter 151B to exhaust administrative remedies.  *See Mekonnen* v. *OTG Mgmt., LLC*, 394 F. Supp. 3d 134, 148 (D. Mass. 2019), *aff'd*, No. 19-1846, 2021 WL 1110915 (1st Cir. 2021).  Austin Prep does not contest Mrs. Der Sarkisian's claims on jurisdictional grounds.

In 1996, Mrs. Der Sarkisian started working at Austin Prep as a substitute teacher for the sixth grade.  She then became a full-time teacher for sixth grade English; she taught sixth and seventh grade English at Austin Prep from 1996 to 2017.  Beginning in 2017, Mrs. Der Sarkisian taught ninth grade English.

### 2.   Mrs. Der Sarkisian's Duties

As a teacher at Austin Prep, Mrs. Der Sarkisian was required to attend her classes in person; she never taught classes remotely or via video.  In addition to teaching five English classes, Mrs. Der Sarkisian "monitor[ed] various activities at Austin Prep, serv[ed] as an advisor, attend[ed] faculty meetings, and . . . was involved with students on campus throughout the day."

### 3.   Mrs. Der Sarkisian's Employment Agreements

Mrs. Der Sarkisian's 2018-2019 employment was governed by a collectively bargained agreement between Austin Prep's Board of Trustees and Austin Prep's Teacher's Association ("APTA Agreement").  However, the APTA Agreement was terminated at the end of the 2018-2019 school year and was not in effect for the 2019-2020 school year.  Mrs. Der Sarkisian was aware that the APTA Agreement was no longer in effect during the 2019-2020 school year.

In a June 9, 2019 e-mail, Dr. Hickey announced that Austin Prep was implementing new policies related to sick days and disabilities.  Specifically, Austin Prep reduced the number of potential sick days from 110 to 65 and implemented a long-term

4

disability policy.   The long-term disability policy carried no cost and became effective September 1, 2019.   Mrs. Der Sarkisian signed a contract that included these benefits.

During Mrs. Der Sarkisian's deposition she recognized that Austin Prep had indicated that the long-term disability was meant to substitute for the elimination of the sick days.   She testified that she believed this arrangement meant that "if . . . [she] used up the 65 [sick] days," "[she] had nothing to worry about" because of the long-term disability benefits.   Her counsel repeated this contention at the November 30, 2022 argument of the summary judgment motion before me.   More pertinently, however, Mrs. Der Sarkisian acknowledged during her deposition — and her counsel conceded during oral argument — that Austin Prep never indicated that she would be "entitled to continue [her] employment while . . . receiving long term disability benefits."

### 4.   Mrs. Der Sarkisian's First and Second Surgeries

In the summer of 2019, Mrs. Der Sarkisian met with Dr. Daniel Ward at Longwood Orthopedic Associates, Inc. regarding pain in her hip and learned that she would need hip surgery.   Dr. Ward notified Mrs. Der Sarkisian that he had a cancellation and would be able to fit her in for surgery on September 5, 2019.   Accordingly, Mrs. Der Sarkisian notified Austin Prep that she would have hip surgery on September 5, 2019 and would be out for approximately four weeks. Austin Prep granted her request for leave and retained Jonathan

Bourdeau, a forty-one-year-old substitute teacher having no formal contract with Austin Prep, to cover her five classes.

Although Mrs. Der Sarkisian had originally intended to return to teaching in October 2019, she needed a second surgery and notified Austin Prep on October 13, 2019 that she"[m]ost likely . . . will be out for the first semester." Accordingly, Austin Prep requested that Mrs. Der Sarkisian's new orthopedist, Dr. Van Flandern[2], who was also affiliated with Longwood Orthopedic Associates, Inc., provide an updated Family Medical Leave Act ("FMLA") Certification because her leave was going to be longer than she initially represented. Dr. Van Flandern returned the updated certification on October 28, 2019; in the certification, he opined that Mrs. Der Sarkisian would likely require 2-3 months to recover, that she could not perform her job functions, and that her condition would last from October 5, 2019 to January 5, 2020. After receiving this information, Mr. Weber told Mrs. Der Sarkisian that she was expected to return to Austin Prep on January 6, 2020 and gave her information regarding the new long-term disability program.

   5.   Mrs. Der Sarkisian's Third Surgery

Mrs. Der Sarkisian, after reading through the long-term

---

[2] Dr. Van Flandern apparently performed Mrs. Der Sarkisian's second and third surgeries, taking over her case when Dr. Ward was out of town at the time that she needed the second surgery.

disability program, notified the school that she would apply for the benefits and on November 26, 2019 filled out her portion of that application. To qualify for long-term disability benefits, "an individual must be unable to perform at least one of the material duties of the individual's regular occupation on a part-time or full-time basis because of an injury or sickness." Mrs. Der Sarkisian reported that she became unable to work on September 4, 2019.

In the long-term benefits application, Mrs. Der Sarkisian also notified the school that she required a third surgery, which would occur on November 27, 2019. Accordingly, although she initially wrote January 2020 as her return-to-work date on her long-term benefits application, she crossed that out and wrote "unsure after 3rd surgery." When Dr. Van Flandern filled out his portion of her application, he stated that Mrs. Der Sarkisian had a "total temporary disability." He reported that she needed three to six months to recover, and could not walk, stand, or drive. Mrs. Der Sarkisian's husband submitted the long-term disability form to Austin Prep on December 4, 2019. Mrs. Der Sarkisian e-mailed Mr. Weber at Austin Prep the next day to confirm receipt of the application, noting that she "definitely will be out longer than [she] expected" and would "have to do an intravenous injection of antibiotics at home until at least February 7th."

6.   The Accommodation Form

After Mrs. Der Sarkisian told Austin Prep that she would need additional time to rehabilitate following her three surgeries, Austin Prep asked her to give her doctor an Accommodation Request Inquiry Form ("Accommodation Form").  The Accommodation Form asked Dr. Van Flandern to provide information regarding "whether there is a reasonable accommodation that would allow [Mrs. Der Sarkisian] to perform the essential functions of her job" because Austin Prep "ha[d] insufficient information to adequately determine whether [she] [was] disabled as defined by the [Americans with Disabilities Act]."  At this point, Mrs. Der Sarkisian had used all of her available FMLA leave and sick days.

Dr. Van Flandern responded that her hip "impairment" would last three to six months, that it affected a number of her "major life activit[ies],"[3] that she was "currently non-weight bearing," that she could not walk, use stairs, bend, squat, lift, or drive, that she would have difficulty performing "[a]ll" of her job functions, and that "[s]he should be on total temporary disability."  Dr. Van Flandern did not suggest any accommodations, aside from "total temporary disability."  Mrs. Der Sarkisian signed the form releasing her medical information on December 3, 2019.

---

[3] Specifically, "[c]aring for [s]elf," "[p]erforming [m]annual[t]asks," "[s]leeping," "[w]alking," "[s]tanding," "[w]orking," "[l]ifting," and "[b]ending."

7.    Mrs. Der Sarkisian's Employment Termination

On December 26, 2019, after reviewing the Accommodation Form, Mr. Weber of Austin Prep called Mrs. Der Sarkisian to tell her that the school had terminated her employment.  Shortly thereafter, Mrs. Der Sarkisian received a letter memorializing her termination, which explained that Austin Prep "ha[d] a growing need to fill [her] position," and "[could not] provide an extended and continuing leave of absence with no set end date."

## II. Austin Prep's Motion for Summary Judgment

Austin Prep moves for summary judgment on both Counts I and II of Mrs. Der Sarkisian's Complaint.  I address each in turn.

### A.    *Summary Judgment Standard*

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "An issue is 'genuine' if a reasonable jury could resolve the point in favor of the nonmoving party.  A fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  *Tropigas de Puerto Rico, Inc.* v. *Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations and quotations omitted).

When evaluating a motion for summary judgment, a court "must construe the record in the light most favorable to the nonmovant and resolv[e] all reasonable inferences in that party's favor."

*Collins* v. *Univ. of N.H.*, 664 F.3d 8, 14 (1st Cir. 2011) (alteration in original) (internal citation and quotations omitted).   In all events, I must "proceed with caution and restraint when considering summary judgment motions where, as here, issues of motive and intent must be resolved, [because] the nonmoving party must proffer more than conclusory allegations, improbable inferences, and unsupported speculation for [her] claims to survive." *Brader* v. *Biogen Inc.*, 983 F.3d 39, 55 (1st Cir. 2020) (internal quotations and citations omitted).

**B.   *Count I:  Disability Discrimination under the ADA and Mass. Gen. Laws ch. 151B, §4(16)***

Mrs. Der Sarkisian alleges, in Count I, that Austin Prep violated the Americans with Disabilities Act ("ADA") and Massachusetts General Laws chapter 151B by terminating her employment when it should have accommodated her with additional and open-ended leave following her multiple surgeries.

I observe that the specific statutory provisions on which Mrs. Der Sarkisian's claims are based are detailed in their directives.[4]  Massachusetts law declares it unlawful

---

[4]    Mrs. Der Sarkisian's Complaint cites generically to Mass. Gen. Laws c. 151B, § 1, which lists various definitions used in that Chapter.  Her allegations in this Count appear to allege a claim under Mass. Gen. Laws c. 151B, §4(16).  Similarly, with respect to her Americans with Disabilities Act ("ADA") claim, Mrs. Der Sarkisian cites generically to 42 U.S.C. § 12101, which describes the ADA's "[f]indings and purpose."  Her allegations in this Count appear to allege a claim under 42 U.S.C. § 12112.

> For any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business.

MASS. GEN. LAWS. ch. 151B, § 4(16).  The ADA provision is substantially similar, including "[t]he statutory definitions of 'disability' under federal law and 'handicap' under Massachusetts law." *See Brader* v. *Biogen Inc.*, 983 F.3d 39, 54 n.22 (1st Cir. 2018).

Because "[the First Circuit] analyze[s] claims under the ADA and under Massachusetts General Laws chapter 151B using the same framework," I address the two statutes together. *Jones* v. *Nationwide Life Ins. Co.*, 696 F.3d 78, 86 (1st Cir. 2012).  Under both statutes, because Mrs. Der Sarkisian has not offered direct evidence of discrimination, I apply the framework outlined in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), which requires a plaintiff to set forth a "three-factor prima facie case." *Jones*, 696 F.3d at 86.  Here, Mrs. Der Sarkisian must show that "[she] ha[d] a handicap [or disability, under the ADA]; that she was nonetheless qualified to perform the essential functions of the job, with or without reasonable accommodation; and that,

despite the foregoing, [Austin Prep] discharged her." *Miceli* v. *JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019).

If Mrs. Der Sarkisian can make that prima facie showing, "[t]he burden of production . . . shifts to [Austin Prep], which must proffer a legitimate reason for the adverse employment action." *Id.* Should Austin Prep provide a legitimate reason for terminating Mrs. Der Sarkisian's employment, she then must demonstrate "that the adverse employment action was taken 'because of' her handicap and 'not for the reason proffered by the employer.'" *Id.* at 82 (quoting *Gannon* v. *City of Boston*, 73 N.E. 3d 748, 756 (Mass. 2017)).  In other words, Mrs. Der Sarkisisan must show that Austin Prep's proffered reason was pretextual or that Austin Prep "harbored discriminatory animus."[5]  *Brader*, 983 F.3d at 58.

---

[5] It is at this final stage that Massachusetts law diverges from the ADA: "Massachusetts is a pretext only jurisdiction." *Bulwer* v. *Mount Auburn Hosp.*, 46 N.E.3d 24, 33 (Mass. 2016) (quoting *Blare* v. *Husky Injection Molding Sys. Bos., Inc.*, 646 N.E.2d 111, 116 (Mass. 1995)).  In contrast, under the ADA, a plaintiff must "establish both discriminatory animus and pretext." *Brader*, 983 F.3d at 59 n. 23.  To show pretext at the summary judgment stage, a "plaintiff need only present evidence from which a reasonable jury could infer that 'the respondent's facially proper reasons given for its action against [her] were not the real reasons for that action.'" *Bulwer*, 46 N.E.3d at 33 (quoting *Wheelock Coll.* v. *Mass. Comm'n Against Discrimination*, 355 N.E.2d 309, 315 (Mass. 1976)).  Here, I conclude Mrs. Der Sarkisian has established neither pretext nor discriminatory animus, and as a result, the divergence between the two statutory schemes is inconsequential for purposes of the summary judgment motion now before me.

Austin Prep does not appear to contest that Mrs. Der Sarkisian was disabled within the meaning of the ADA or handicapped under Massachusetts law. Rather, Austin Prep contends that Mrs. Der Sarkisian cannot establish her case of disability discrimination because she was not a "qualified individual." Austin Prep further contends it provided her an initial accommodation and thereafter, she did not specifically request any other reasonable accommodation. Finally, Austin Prep contends, even if she could meet these initial requirements, she cannot demonstrate pretext or discriminatory animus. In response, Mrs. Der Sarkisian argues that she was a qualified individual and that Austin Prep failed to engage in a an "interactive process" to determine a reasonable accommodation for her at Austin Prep.[6]

1. Whether Mrs. Der Sarkisian is a "Qualified Individual" under the ADA or a "Qualified Handicapped Person" under Massachusetts Law

It bears reemphasizing at this point that "[t]he Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law." *Ward* v. *Mass. Health Rsch. Inst., Inc.*, 209 F.3d 29, 33 n.2 (1st Cir. 2000). "Accordingly, while

---

[6] Mrs. Der Sarkisian's pretext argument as to Count I is not particularly clear. It seems to mirror her argument with respect to age discrimination. Because Mrs. Der Sarkisian cannot show that she was a qualified individual, however, I need not reach the issue of pretext.

[I] write in terms of the ADA, [my] comments apply with equal force to [Mrs. Der Sarkisian's] claim under [Chapter 151B]." *Mulloy* v. *Acushnet Co.*, 460 F.3d 141, 154 (1st Cir. 2006) (citations omitted).

To be a "qualified individual," Mrs. Der Sarkisian must show "first, that she 'possess[es] 'the requisite skill, experience, education and other job-related requirements' for the position, and second, [that she is] able to perform the essential functions of the position with or without reasonable accommodation.'" *García-Ayala* v. *Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000) (alteration in original) (quoting *Criado* v. *IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998) (quoting 29 C.F.R. § 1630.2(m)). Mrs. Der Sarkisian taught at Austin Prep, in either a full-time or substitute teacher position, for more than twenty years.  There does not appear to be a dispute as to whether she had the necessary skills to perform her duties.

The stone for stumbling on this element of her claim is that Mrs. Der Sarkisian cannot marshal "sufficient evidence showing that . . . she could perform the job's essential functions either with or without a reasonable accommodation" and that Austin Prep "knew of her disability, yet failed to reasonably accommodate it." *Lang* v. *Wal-Mart Stores E., L.P.*, 813 F.3d 447, 454 (1st Cir. 2016).

a.   *Whether Mrs. Der Sarkisian Could Perform the*
*Essential Functions of Her Role at Austin Prep*

Under the ADA, "[a]n 'essential function' is a fundamental job duty of the position at issue." *Kvorjak* v. *Maine*, 259 F.3d 48, 55 (1st Cir. 2001) (citing 29 C.F.R. § 1630.2). Although an "essential function" does not "include 'marginal' tasks, [it] may encompass 'individual or idiosyncratic characteristics' of the job." *Id.* (quoting *Ward*, 209 F.3d at 34). "[S]ubstantial weight" is often given to an "employer's view of job requirements in the absence of evidence of discriminatory animus," but other factors are considered also, including "written job descriptions, consequences of not requiring the function, work experience of past incumbents, and work experience of current incumbents." *Ward*, 209 F.3d at 34.

As a teacher at Austin Prep, Mrs. Der Sarkisian was required to attend her classes and faculty meetings in person, teach five English classes, monitor other activities, and act as an advisor to students. During her more than twenty years of employment at Austin Prep, Mrs. Der Sarkisian never taught students remotely or via video, and testified that teaching remotely was "unheard of." Moreover, Mrs. Der Sarkisian's job description explained that when she was not actively teaching her sections during the day, she was "on-call for substitute teaching and class coverage" and otherwise should use that time for meeting with various people at Austin

15

Prep.  She was expected to attend various Austin Prep activities, such as athletic events and student performances, as well as professional meetings and trainings.  Under these circumstances, regular attendance was an "essential function" of Mrs. Der Sarkisian's role.[7]

From September 4, 2019 until her termination on December 26, 2019, Mrs. Der Sarkisian was not present at Austin Prep and did not teach any of her classes.  At the time of her termination, she did not provide a date by which she would be able to return to Austin Prep and was at best "unsure" regarding her return to teaching date.

Although Mrs. Der Sarkisian "possess[ed] the skills necessary to perform the job," "employee[s] must be willing and able to demonstrate these skills by coming to work on a regular basis." *Tyndall* v. *Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994).  Even where disability is the reason for the absence, "attendance is an essential function of any job."  *Manning* v. *Abington Rockland Joint Water Works*, 357 F. Supp. 3d 106, 119 (D.

---

[7] Mrs. Der Sarkisian's employment with Austin Prep ended just before the onset of the COVID-19 pandemic.  At the time of her termination, Austin Prep did not know that the pandemic would require a transition to remote learning.  The pandemic required all teachers in particular to learn remote learning skills.  There is no basis to find that Mrs. Der Sarkisian could not also do so if afforded the opportunity to return.  Consequently, I do not consider her prior lack of familiarity with remote learning to be a viable grounds for her termination in December 2019 and Austin Prep makes no such argument.

Mass. 2019) (quoting *Ríos-Jiménez* v. *Principi*, 520 F.3d 31, 42
(1st Cir. 2008)).  Accordingly, by being unable to attend school
in person, Mrs. Der Sarkisian was not able to, at the time of her
termination, nor did she represent she could, fulfill an essential
function of her position.  *See, e.g., Tyndall*, 31 F.3d at 213
("[R]egardless of the fact that she possessed the necessary
teaching skills and performed well when she was at work,
[plaintiff's] frequent absences rendered her unable to function
effectively as a teacher.").[8]

The inquiry, however, does not end there – if Mrs. Der
Sarkisian can show that she "could perform the essential functions
of her job when given a *reasonable accommodation* for her
disabilities, then she would still have a colorable claim."
*Manning*, 357 F. Supp. 3d at 120 (emphasis added).

> b.  *Whether Mrs. Der Sarkisian Could Perform the*
>     *Essential Functions with a Reasonable*
>     *Accommodation*

The First Circuit has long adhered to the fundamental
principle that "[i]n order to prove 'reasonable accommodation,' a

---

[8] Mrs. Der Sarkisian argues that her "disability did not affect
her ability to conduct the essential functions of her job" but
"merely delayed the time when she would be able to resume her
duties," and points to the fact that her cognitive abilities were
not at all impaired.  This argument is out of focus.  Mrs. Der
Sarkisian fails to address that attendance *itself* is an essential
function of her job.  *See, e.g., Mulloy* v. *Acushnet Co.*, 460 F.3d
141, 150 n.5 (1st Cir. 2006) (collecting cases for proposition
that attendance is a critical component of most jobs).

plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that. . . it is feasible for the employer under the circumstances." *Reed* v. *LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Here, Austin Prep contends that at the outset of her disability it provided Mrs. Der Sarkisian a reasonable accommodation by giving her an extended leave of absence, but did not have an obligation to extend her leave indefinitely, and that Mrs. Der Sarkisian did not articulate any other accommodation that would allow her to perform her duties. In response, Mrs. Der Sarkisian contends that Austin Prep failed to engage in an "interactive process" to identify a reasonable accommodation, and that an additional extension to her leave of absence was reasonable.

Typically, an employer need not offer a reasonable accommodation until the employee requests it with sufficient specificity. *See Reed*, 244 F.3d at 260-61. However, once the employee makes a request for a reasonable accommodation, an employer may have a duty to participate in an "interactive process" that "involves an informal dialogue between the employee and the employer in which the two parties discuss the issues affecting the employee and potential reasonable accommodations that might address those issues." *E.E.O.C.* v. *Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014). The employer must participate "in

good faith" but if an employee "fails to cooperate in the process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations." *Id.*

Taking the facts in the light most favorable to Mrs. Der Sarkisian, when Mrs. Der Sarkisian made a request to extend her leave of absence due to her third surgery, she made a request for accommodation that triggered Austin Prep's duty to "engage in an interactive process." *Echevarría* v. *AstraZeneca Pharma. LP*, 856 F.3d 119, 133 (1st Cir. 2017) (citation omitted). And Austin Prep did just that — it explicitly asked Mrs. Der Sarkisian's doctor to fill out a form that would help Austin Prep determine "whether there is a reasonable accommodation that would allow [Mrs. Der Sarkisian] to perform the essential functions of her job." Dr. Van Flandern at best suggested that Mrs. Der Sarkisian "should be on total temporary disability" for an uncertain but extended time period.

I confront on this record, a circumstance in which "the employee fails to satisfy her burden of showing that a reasonable accommodation existed, [and as a result,] the employee cannot maintain a claim for failure to engage in an interactive process." *Echevarría*, 856 F.3d at 133. Requesting additional leave would not allow Mrs. Der Sarkisian to perform an essential function of her job, namely attending to her school duties. Austin Prep is under no obligation to "accommodate an employee by exempting her

from having to discharge an essential job function." *Lang*, 813 F.3d at 456.[9]

Mrs. Der Sarkisian seems to argue that Austin Prep should have probed Dr. Van Flandern's response in the Accommodation Form to determine whether there were certain accommodations available. But it is long settled that "[t]he burden is on [Mrs. Der

---

[9]   Mrs. Der Sarkisian correctly notes that accommodations in the form of leave requests "turn[] on the facts of the case." *García-Ayala* v. *Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000) (citation omitted).  However, in these circumstances, an additional extension of leave was not a reasonable accommodation. Mrs. Der Sarkisian had not set a return date, and "[s]uch an open-ended request for additional leave is just the type of wait-and-see approach that has been rejected as giving rise to a triable issue on reasonable accommodation." *Henry* v. *United Bank*, 686 F.3d 50, 61 (1st Cir. 2012).
   I recognize the First Circuit has held that some open-ended leave requests might be reasonable, but it has done so in distinguishable circumstances. *García-Ayala*, 212 F.3d at 649-50 (leave extension reasonable where employee provided specific return date, temporary workers filled employee's responsibility, and employer decided to terminate employee based purely on company policy); *Criado* v. *IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998) (leave extension reasonable where evidence showed that "leave would be temporary and would allow her physician to design an effective treatment program," company provided 52 weeks of paid disability leave, and company acknowledged that allowing the employee to recover was "more profitable" than hiring and training a new employee).
   In the context of teaching and related responsibilities of a school, other considerations are in play.  Austin Prep wanted to ensure that its students had consistency with respect to their educators.  Moreover, Austin Prep was understandably concerned that Mrs. Der Sarkisian's temporary replacement, Mr. Bourdeau, who did not have a formal contract with the school, would leave for a position elsewhere, thus exacerbating the burden of an open ended accommodation to the school's mission.  Accordingly, on these facts, an additional period of leave without end date was not a reasonable accommodation.

Sarkisian] to show the existence of a reasonable accommodation," *Phelps* v. *Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001), and Austin Prep "is obviously not obligated to offer an 'accommodation' to an employee that is contrary to medical advice," *Jones* v. *Walgreen Co.*, 765 F. Supp. 2d 100, 108 n.3 (D. Mass. 2011), *aff'd*, 679 F.3d 9 (1st Cir. 2012).  Mrs. Der Sarkisian also points to her deposition testimony, where she stated that "if [she] had known [her] job was in jeopardy, [she] would have come back in a wheelchair."  However, Austin Prep "is entitled to be judged on what it knew at the time or could reasonably foresee."  *Evans* v. *Fed. Exp. Corp.*, 133 F.3d 137, 140 (1st Cir. 1998).  Moreover, there is no indication that a wheelchair would have been a feasible accommodation at that time.[10]

Because Mrs. Der Sarkisian has failed to set out a prima facie case of discrimination disability, I need not address whether she can show pretext and I will grant Austin Prep's motion for summary judgment on this Count.

---

[10] Mrs. Der Sarkisian's arguments regarding her later assessments of her doctor and physical therapist are not persuasive for similar reasons.  Austin Prep had to base its decisions "on what it knew at the time or could reasonably foresee."  *Evans* v. *Fed. Exp. Corp.*, 133 F.3d 137, 140 (1st Cir. 1998).  Her doctor's assessment, at the time of her termination, was that she needed to be on "total temporary disability" and that her impairment would continue for "3-6 months."

### C.    Count II:  Age Discrimination under MASS. GEN. LAWS. ch. 151B, § 4(1B)

Under Massachusetts law, it is unlawful

For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

MASS. GEN. LAWS ch. 151B, § 4(1B).

I employ the *McDonnell Douglas* standard, which is applicable in age discrimination cases under Massachusetts law where there is no direct evidence of age discrimination. *See Blare* v. *Husky Injection Molding Sys. Bos., Inc.*, 646 N.E.2d 111, 114-15 (Mass. 1995).  Accordingly, to meet her prima facie burden, a plaintiff must show that she "(1) is a member of a protected class-here an individual above the age of forty; (2) met [her] employer's legitimate job performance expectations; (3) experienced an adverse employment action; and (4) was replaced by a person with roughly equivalent job qualifications." *Matteo* v. *Hitachi Global Storage Techs., Inc.*, No. 11-11191-DPW, 2013 WL 6092853, at *3 (D. Mass. 2013).

If a plaintiff can make her prima facie case, then the burden shifts to the defendant to proffer a legitimate and nondiscriminatory reason for its employment action. *Paul* v. *Murphy*, 948 F.3d 42, 49 (1st Cir. 2020).  Should the defendant

meet this "burden of production," then the plaintiff "bears the ultimate burden of proof to show that the employer's proffered nondiscriminatory reason for the adverse employment action was a pretext" for illegal age discrimination. *Bonilla-Ramirez* v. *MVM, Inc.*, 904 F.3d 88, 94 (1st Cir. 2018) (describing the *McDonnell Douglas* framework in the context of sex discrimination). "At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that [s]he was fired because of h[er] age." *Dávila* v. *Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 16 (1st Cir. 2007).

For the purpose of summary judgment, Austin Prep does not contest that Mrs. Der Sarkisian can meet her prima facie burden. Rather, Austin Prep argues that Mrs. Der Sarkisian cannot show that the reason for her termination was pretextual, or that Austin Prep had "discriminatory animus" against her due to her age.  I note at the outset that Massachusetts law, which is the sole statute-at-issue in Count II, does not require intentional discrimination.  *See Koster* v. *Trans World Airlines, Inc.*, 181 F.3d 24, 30 (1st Cir. 1999) ("Age discrimination plaintiffs in Massachusetts have a lesser burden than those under federal law. Massachusetts law requires the employee to show only pretext . . . ."); *Gordon* v. *EarthLink, Inc.*, No. 14-14145-FDS, 2017 WL 3203385, at *8 (D. Mass. July 27, 2017) (explaining, in the context of age

discrimination, that MASS. GEN. LAWS. ch. 151B is a "pretext-only" statute (citation omitted)).

    1.    <u>Austin Prep's Proffered Reason for Mrs. Der Sarkisian's Termination</u>

Austin Prep contends that it terminated Mrs. Der Sarkisian's employment only after it became apparent, on the basis of her own representations and her doctor's reports, that she would not be able to return to work within a feasible time period — if at all. Austin Prep also observes that no one at the school ever made comments regarding her age, that Austin Prep employed Mrs. Der Sarkisian well into her sixties, and that Austin Prep employs other teachers who are in their seventies. Finally, Austin Prep observes that both Dr. Hickey and Mr. Weber, those responsible for her termination, at all relevant times were both over forty, the critical point at which age discrimination cases can be asserted.

    2.    <u>Whether Austin Prep's Termination of Mrs. Der Sarkisian Was Pretextual</u>

In order to demonstrate pretext in this setting, Mrs. Der Sarkisian identifies three teacher comparators, one a younger teacher who was given a longer leave of absence, the other two teachers in her age cohort she says faced harassing and unsubstantiated complaints and consequently resigned.

    *a.*   *The Younger Teacher Comparator*

To establish the materiality of this type of comparator, Mrs. Der Sarkisian attempts "to demonstrate that [a] similarly situated

[younger] employee[] [was] treated differently." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 686 N.E.2d 1303, 1309 (Mass. 1997) (discussing comparators in context of race discrimination). To establish pretext on this basis, Mrs. Der Sarkisian must "identify and relate specific instances where persons similarly situated 'in all relevant aspects' were treated differently." *Id.* at 1310 (quoting *Dartmouth Rev.* v. *Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir.1989), *overruled on other grounds by Educadores Puertorriqueños en Acción* v. *Hernandez*, 367 F.3d 61 (1st Cir. 2001)); *see also Woodward* v. *Emulex Corp.*, 714 F.3d 632, 639 (1st Cir. 2013) ("Disparate treatment between older and younger employees is a familiar means of establishing pretext."). "That is, someone who is 'substantially similar to [the plaintiff]' 'in all relevant aspects' concerning the adverse employment decision. 'The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. ... In other words, apples should be compared to apples.'" *Dusel* v. *Factory Mut. Ins. Co.*, 52 F.4th 495, 507 (1st Cir. 2022) (quoting *Trs. of Health & Hosps. of Bos., Inc.* v. *MCAD*, 871 N.E.2d 444, 450 (Mass. 2007)).

Mrs. Der Sarkisian argues that the treatment of Katie Haughn, a younger teacher at Austin Prep, shows that Austin Prep's proffered reasons for her termination were pretextual. Ms. Haughn, who is younger than Mrs. Der Sarkisian, was permitted to take an

extended leave from Austin Prep, which lasted from December 2019 to June 2020, due to a physical disability. Mrs. Der Sarkisian concedes that Ms. Haughn was eventually fired, but claims, without admissible support in the record, that it was rumored to have been due to her physical disability "transform[ing] into a cognitive disability in June 2020."

The similarities between the two teachers were at the highest level of generality. Both Mrs. Der Sarkisian and Ms. Haughn were teachers at Austin Prep. Like Mrs. Der Sarkisian, Ms. Haughn requested a leave of absence from Austin Prep for medical reasons. Ms. Haughn's absence started in the middle of the first semester of the 2019-2020 school year and continued into the second semester. During the second semester, Ms. Haughn's doctor gave Austin Prep an Accommodation Form that stated she could not perform the essential functions of her job as a teacher, with or without accommodation. After receiving this form, Austin Prep terminated Ms. Haughn, who was thirty-eight at the time.

Mrs. Der Sarkisian apparently argues that she was treated differently because Ms. Haughn received a *longer* leave than she did. However, in her deposition testimony, Mrs. Der Sarkisian stated that she "never saw" Ms. Haughn's medical records or doctor's submissions to the school; accordingly, she cannot know whether Ms. Haughn's condition required a longer leave at the onset, or whether Ms. Haughn and her doctors' conversations with

the school differed from her own.[11]   As such, it is clear that Mrs. Der Sarkisian and Ms. Haughn do not present an "apples to apples" comparison.   *See Dartmouth Rev.*, 889 F.2d at 19.

In any event, Mrs. Der Sarkisian's argument has another flaw — Austin Prep treated Ms. Haughn and Mrs. Der Sarkisian in exactly the same manner, despite their differences in age.   Both teachers were permitted to take an extended leave of absence.   However, from all that appears in the record once it became apparent that they could not perform their duties even with accommodation, Austin Prep terminated their employment.

b.   *Age Seventy or Older Comparators*

To establish the materiality of her age seventy and older comparators, Mrs. Der Sarkisian points to Austin Prep's failure to hire any employees older than seventy.   The thrust of this argument is that the only performance related Counseling Memorandum she received at Austin Prep[12] came when she was seventy, thereby

---

[11] Mrs. Der Sarkisian's testimony and argument that Ms. Haughn was only dismissed because her physical disability transformed into a cognitive disability is without merit.   Although she testified that she spoke to Ms. Haughn from time to time, Mrs. Der Sarkisian also testified that she has not seen Ms. Haughn's medical records and was not privy to communications between Ms. Haughn's doctor and the school.   Mrs. Der Sarkisian cannot "rest[] merely upon conclusory allegations" or "unsupported speculation" to oppose Austin Prep's motion for summary judgment.   *Medina-Munoz* v. *R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

[12] Counseling Memorandums are apparently a tool that Austin Prep uses to document performance-related issues.   The one Counseling Memorandum Mrs. Der Sarkisian received related to a parent's complaint that she "scared children."

evidencing age discrimination, and that other older teachers received similar "harassing and unsubstantiated complaints."

These arguments are unpersuasive. First, nothing in the record before me shows whether any people over the age of seventy have even *applied* to teach at Austin Prep. *See LeBlanc* v. *Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993) ("[T]he fact that recently hired [employees] are younger than [plaintiff] is not necessarily evidence of discriminatory intent, but may simply reflect a younger available work force.").

Second, the impact of Mrs. Der Sarkisian's contentions regarding the Counseling Memorandum are unclear. In her own filing in this case, Mrs. Der Sarkisian explains that "[d]espite this Counseling Memorandum, [she] was invited back by Austin Prep to return to continue being a full-time faculty member." Accordingly, it does not appear that the Counseling Memorandum factored into Mrs. Der Sarkisian's termination, nor does it show discrimination, because, by her own admission, she was invited back to Austin Prep afterwards.

Finally, her claims regarding other teachers are unsubstantiated in the record. Mrs. Der Sarkisian cites her own deposition testimony, but does not dispute that Ms. Garcia-Matta and Mr. Edwin Meek — the two teachers Mrs. Der Sarkisian alleges faced "harassing and unsubstantiated complaints" — voluntarily resigned their positions at Austin Prep. Despite Mrs. Der

Sarkisian's deposition testimony that she had online communications with Mr. Meek, her counsel confirmed that those messages have not been produced during the November 30, 2022 summary judgment hearing. There is no evidence in the record, apart from Mrs. Der Sarkisian's elliptical and conclusory second-hand accounts, to substantiate her allegations. Mrs. Der Sarkisian must adduce more than "sketchy evidence" to oppose the aspect of a motion for summary judgment. *Smith* v. *Stratus Comput., Inc.*, 40 F.3d 11, 17 (1st Cir. 1994). She has not.

> c.   *Conclusion*

These facts, as admissibly presented in the court, cannot establish pretext. Accordingly, I will grant Austin Prep's motion for summary judgment on this Count.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT Austin Prep's motion [Dkt. No. 27] for summary judgment. The Clerk is directed to enter judgment for Austin Prep.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

## APPENDIX

Although I have granted summary judgment to Austin Prep as to Mrs. Der Sarkisian's Complaint, I discuss in this addendum the contents of summary judgment submissions by Mrs. Der Sarkisian and the way in which I have approached the challenges in Austin Prep's motion [Dkt. No. 40] to strike.

Austin Prep's motion broadly asserted that its entire statement of undisputed facts should be deemed admitted, in accordance with Local Rule 56.1, and that correlatively Mrs. Der Sarkisian's statement of facts and accompanying materials should be stricken.  In the alternative, Austin Prep identified specific paragraphs in Mrs. Der Sarkisian's statement of facts and affidavit that it contends I should strike:  (1) paragraphs 2, 3, 11, 13, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 27, and 28 of Mrs. Der Sarkisian's Statement of Undisputed Facts and (2) paragraphs 8, 13, 14, 15, 16, 18, and 20 of Mrs. Der Sarkisian's Affidavit.  Mrs. Der Sarkisian agreed to strike paragraph 13, and accordingly I did not consider that paragraph of her affidavit.  For her part, Mrs. Der Sarkisian requested leave to amend paragraphs 2 and 15 of her Statement of Facts, argued that her affidavit should not otherwise be stricken, and, though untimely, filed a proper response to Austin Prep's statement of undisputed facts in an effort to parry the thrust of Austin Prep's motion to strike.

### A.   *Local Rule 56.1*

To put the discussion in context I set forth the process by which facts are properly placed in dispute for purposes of summary judgment practice in this court.

To "expedite the process of determining which facts are genuinely in dispute, so that the court may turn quickly to the usually more difficult task of determining whether the disputed issues are material," the United States District Court for the District of Massachusetts adopted Local Rule 56.1. *Brown* v. *Armstrong*, 957 F. Supp. 1293, 1297 (D. Mass. 1997), *aff'd*, 129 F.3d 1252 (Table) (1st Cir. 1997) (per curiam).  Local Rule 56.1 requires a party opposing summary judgment to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation" with its motion, filed "within 21 days after the motion is served," "unless the court orders otherwise."  L.R. 56.1.  As the First Circuit has observed in referencing another district's similar rule, "absent [rules like 56.1], summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'"  *Ruiz Rivera* v. *Riley*, 209 F.3d 24, 28 (1st Cir. 2000) (citation omitted), *abrogated on other grounds*

*by de Aza-Paez* v. *United States*, 343 F.3d 552 (1st Cir. 2003) (per curiam).

Where parties ignore this type of Local Rule, they do so "at their peril." *Id.; see also Summers* v. *City of Fitchburg*, 940 F.3d 133, 138 (1st Cir. 2019) (affirming district court's decision to "allow[] the defendants['] [statement of facts] to map the boundaries of the summary judgment record" where "plaintiffs flouted Local Rule 56.1" of this court). Accordingly, I have the discretion to deem Austin Prep's Statement of Undisputed Material Facts admitted as a sanction for Mrs. Der Sarkisian's failure to comply with Local Rule 56.1. *See Butters* v. *Wells Fargo Advisors, LLC*, Civ. A. No. 10-10072-MLW, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012).

In this instance, I declined to exercise my discretion in that way. To be sure, Mrs. Der Sarkisian initially did not submit a statement of disputed facts in compliance with Rule 56.1. Rather, her submission merely set forth what the First Circuit has characterized as a narrative "alternate statement of facts" that "thwarted" the "salutary purpose" of Rule 56.1. *Cában Hernández* v. *Philip Morris USA, Inc.*, 486 F.3d 1, 7-8 (1st Cir. 2007) (describing parallel Local Rule in District of Puerto Rico). However, Mrs. Der Sarkisian did, eventually, submit a response in the form contemplated by Rule 56.1. In this instance, although Mrs. Der Sarkisian's submission was untimely, I find that by

providing a response substantially as contemplated by the rule, she ultimately did "not obscure[] the relevant issues to such an extent as to justify the potentially draconian effect of a deemed admission." *Navarro* v. *U.S. Tsubaki, Inc.*, 577 F. Supp. 2d 487, 492 n.1 (D. Mass. 2008).

Thus, while I did not consider Mrs. Der Sarkisian's originally filed alternative statement of facts in resolving the summary judgment motion before me, I have instead looked to the later submission that was substantially in accordance with Local Rule 56.1. *See Naimark* v. *BAE Sys. Info. & Elec. Sys. Integration Inc.*, No. 20-cv-10138-DJC, 2021 WL 6098728, at *1 n.1 (D. Mass. Dec. 23, 2021) ("'[S]ubmission of a separate statement of undisputed facts [by the opposing party] is not contemplated by the rule,' and the Court need not consider them." (quoting *Terry* v. *SimplexGrinnell LP*, No. 11-cv-40117-TSH, 2013 WL 1332240, at *1 (D. Mass. Mar. 28, 2013)). Because I did not consider Mrs. Der Sarkisian's statement of facts, I declined to consider her proposed amendments to paragraphs 2 and 15.

In this connection, I note further that I have considered only the factual components of Mrs. Der Sarkisian's belated response. Irrelevant and superfluous argument or conclusory assertions have had no role in my examination of the factual foundation upon which I have resolved the summary judgment motions. I note further in the interest of completeness and to assure myself

no pertinent contention had been neglected, I carefully reviewed Mrs. Der Sarkisian's initial statement of facts but found nothing in that submission to cause me to decide or address Austin Prep's motion for summary judgment in any other way than I have.  *See Brown* v. *Armstrong*, 957 F. Supp. 1293, 1298 n.4 (D. Mass. 1997), *aff'd*, 129 F.3d 1252 (Table) (1st Cir. 1997) (per curiam).

**B.    *Matters Subject to Being Stricken***

   1.    Legal Standard

   Under Federal Rule of Civil Procedure 56, affidavits filed in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  As the First Circuit explained with respect to an earlier version of Rule 56, "[t]he rule requires a scalpel, not a butcher knife." *Perez* v. *Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001). Accordingly, I should "disregard[] only those portions that are inadmissible and credit[] the remaining statements." *Rodríguez-Rivera* v. *Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 170 (1st Cir. 2022) (Thompson, *J.*).

   The "touchstone" of this review is personal knowledge, which "must concern facts as opposed to conclusions, assumptions, or surmise." *Perez*, 247 F.3d at 315-16.  As a result, hearsay statements may not be considered for the truth of the matter

asserted at summary judgment. *Kenney* v. *Floyd*, 700 F.3d 604, 609 (1st Cir. 2012). Finally, a party cannot submit an affidavit that contradicts its clear and unambiguous answers during a deposition, merely to protect itself against summary judgment. *See Escribano-Reyes* v. *Pro. Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016).

### 2. Mrs. Der Sarkisian's Affidavit

Austin Prep moved to strike the entirety of Mrs. Der Sarkisian's affidavit, or in the alternative, paragraphs 8, 14, 15, 16, 18, and 20. Broadly, Austin Prep asserts that these paragraphs are inappropriate because they are: (1) not based on personal knowledge, (2) argumentative and speculative, and (3) hearsay. In approaching this aspect of Austin Prep's motion, I declined to "wield[] a butcher's knife." *Rodríguez-Rivera*, 43 F.4th at 170. Rather, I conducted a more detailed analysis for such surgical excision as appeared necessary.

#### a. *Paragraph 8*

I treated as stricken paragraph 8 because, based on Mrs. Der Sarkisian's deposition testimony, she did not attend the meeting described in this paragraph and does not herself have personal knowledge regarding it. However, Mrs. Der Sarkisian is correct that other materials in the record provide the factual information related to this paragraph.

>  b.   *Paragraph 14*

I did not treat Paragraph 14 as stricken.  Mrs. Der Sarkisian received the e-mail from Austin Prep on January 9, 2020 updating the school on Ms. Haughn's status, and thus has personal knowledge of the information circulated by the school referenced in this paragraph.

>  c.   *Paragraphs 15 and 20*

I have treated Paragraphs 15 and 20 as stricken because they are argumentative, present legal conclusions, and lack personal knowledge.  *See Siupa* v. *Astra Tech., Inc.*, No. 10-10525-LTS, 2013 WL 4854031, at *7 ("[Plaintiff] may not rely upon her own interpretation of the law or the legal conclusions she wishes the Court to draw from the facts at hand.").

>  d.   *Paragraph 16*

Mrs. Der Sarkisian argues that "[t]he point" of this paragraph "is supported by [her] medical records."  I have reviewed the documents she has cited and have considered them as necessary to resolve the motion for summary judgment, however, I observe that they do not substantiate this paragraph.  Moreover, although Mrs. Der Sarkisian testified during her deposition that Dr. Van Flandern offered to provide Austin Prep with a revised report, as Mrs. Der Sarkisian's counsel conceded during the November 30, 2022 summary judgment hearing, no such report has been provided or filed in this matter.

      *e.   Paragraph 18*

As with Paragraph 16, I have reviewed the documents that Mrs. Der Sarkisian references, and have considered them in resolving the motion for summary judgment.  However, I observe they do not fully substantiate the contentions asserted in this paragraph.

**C.  *Conclusion***

For the reasons set forth more fully in this Appendix, I have GRANTED in part and DENIED in part Austin Prep's motion [Dkt. No. 40] to strike.